UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LYST LTD, | ) |
| | ) |
| Plaintiff | ) **COMPLAINT** |
| | ) |
| v. | ) CIVIL ACTION No. |
| | ) |
| LYSTABLE INC., | ) **JURY TRIAL REQUESTED** |
| | ) |
| Defendant. | ) |

## INTRODUCTION

1. Plaintiff Lyst Ltd ("Lyst" or "Plaintiff") brings this complaint against defendant Lystable Inc. ("Lystable" or "Defendant") to enjoin it from infringing Lyst's federally registered LYST® trademark (the "Mark") and to obtain monetary relief from the Defendant's wrongful conduct.

2. Incorporated in 2010, Lyst is one of the world's leading e-commerce marketplaces for fashion and fashion accessories. Lyst uses sophisticated data aggregation and analysis to help consumers to discover and purchase products based on their own personal tastes and preferences, and to provide Lyst's business partners with detailed analytics and business intelligence data about the performance of their products.

3. Lyst has been using the Mark in the United States continuously since at least as early as December 31, 2010. As a result of Lyst's investments in marketing, promoting and advertising the Mark over nearly six years, Lyst has built up a substantial reputation and valuable goodwill in the Mark.

4. Lyst first applied to register the Mark with the United States Patent and

1

Trademark Office ("PTO") on April 12, 2011. The PTO allowed the application and published the Mark for opposition on October 15, 2013. The registration, Reg. No. 5,045,749, issued on September 20, 2016. See Exhibit 1 (certificate of registration for LYST, Reg. No. 5,045,749).

5. The Defendant, by contrast, began using the "Lystable" name in the United States less than three months ago. Upon information and belief, the Defendant was incorporated and began using the "Lystable" name in the United States only in June 2016, more than five years after Lyst applied to register the Mark, about three years after the LYST Mark was published by the PTO, and just shortly before the registration issued.

6. By doing business as "Lystable," the Defendant is infringing the Mark. The name "Lystable" is substantially identical to the Mark from a visual, aural and conceptual perspective. Further, the Defendant provides services that are substantially identical to, and in direct competition with, the services provided by Lyst.

7. The Defendant's adoption and use of the "Lystable" name infringes the Mark and constitutes unfair competition under the federal Lanham Act and New York common law.

8. Lyst brings this action to end the Defendant's continuing infringement of its valuable Mark. Lyst seeks to enjoin the infringement and recover damages and costs that it has sustained as a result of the Defendant's deliberate adoption and use of such a confusingly similar name and mark.

**PARTIES**

9. Plaintiff Lyst Ltd is a company duly organized and existing under the laws of England and Wales, with a business address at 48 Hoxton Square, London, England N1 6PB. Lyst also does business in the United States, through its New York City office, located at 84 Wooster St, No. 603, New York, NY 10012.

10. Upon information and belief, defendant Lystable Inc. is a corporation that was organized under the laws of Delaware on June 8, 2016, with a registered address at 160 Greentree Drive, Suite 101, Dover, DE 19904.  Upon information and belief, Lystable has an office at 300 California Street, Suite 220, San Francisco, California, United States.

## JURISDICTION AND VENUE

11. This Court has original subject matter jurisdiction over Lyst's claims pursuant to the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and 28 U.S.C. §§ 1331 and 1338.  The Court has supplemental jurisdiction over the New York state law claims pursuant to 28 U.S.C. § 1367.

12. This Court has personal jurisdiction over defendant Lystable because upon information and belief it regularly and continuously conducts business in this district, and because it has committed tortious acts that have caused injury in this district, and Lyst's claims arise out of these tortious acts.  Upon information and belief Lystable also has done business in this district, by soliciting and obtaining an equity investment of more than $13 million from private investors located in New York, New York.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Lyst's claims arose in substantial part in this district and because this Court has personal jurisdiction over the Defendant in this district.

## FACTS

### A. Lyst Owns Exclusive Rights To The LYST® Mark.

14. Lyst provides a software platform that digitally hosts, promotes and markets millions of products that are aggregated from Lyst's business partners, who include some of the world's best known fashion brands and retailers, such as Paul Smith, Ralph Lauren, Barneys New York, J.Crew, Burberry, Harrods, Valentino, Alexander Wang, Selfridges, ASOS, and Farfetch.

15. Lyst's business model consists of business-to-consumer ("B2C") and business-to-business ("B2B") components. Both components use sophisticated analytics software, made available to Lyst's users via cloud services and software as a service ("SaaS") that are offered across the globe. Lyst offers access to its platform through its website at www.lyst.com (and various other local country code domain names incorporating the LYST® Mark) and a mobile application

16. Lyst collects, retrieves, aggregates, manages, analyses and presents data from multiple different internal and third party data sources through its global software platform using advanced data science and data analytics processes. Lyst uses this data to allow its business partners to offer products (which include clothing, accessories, bags and jewelery) to customers from third party sites. By using the data it collects and analyzes, Lyst can present a product offering that is tailored and curated to the customer's tastes and requirements. Lyst's software platform allows its B2C customers to purchase these products either on Lyst's site (through a universal shopping cart) or through third-party sites.

17. Lyst also aggregates and anonymizes the data that it collects, compiles, and analyzes. It shares this business intelligence data with its B2B customers, allowing them to interpret trends, customer behavior, and brand or product performance on Lyst's cloud-based platform over more than one hundred countries.

18. In addition, Lyst uses its platform to, among other things, provide editorial features and blogs and surface promotions offered by its partners. Lyst's site features editorial guides and opinion from some of the world's leading designers, fashion houses and brands.

19. Lyst has been continuously using the Mark in connection with these computer software, technology, and data services since at least as early as December 31, 2010. Lyst first

applied to register the Mark with the PTO on April 12, 2011. The PTO allowed the application and published the Mark for opposition on October 15, 2013. The registration, Reg. No. 5,045,749, issued on September 20, 2016. See Exhibit 1 (certificate of registration for LYST, Reg. No. 5,045,749).

20. Lyst's registration for the Mark encompasses (among other things):

- "computer application software"; "a downloadable software application"; "computer software for allowing users to connect with other users via social networking sites"; and "computer application software for allowing data collection, data retrieval, and sharing of data with others electronically" in Class 9;

- "operating online marketplaces for sellers and buyers of goods"; "providing a website where users can post ratings, reviews and recommendations relating to the purchasing of products of others for commercial purposes"; "business services, namely, providing a searchable online database featuring goods of vendors"; "promoting the goods and services of others through advertising via computer communication networks"; "providing of a web site featuring commercial information on shopping"; and "providing a web site where users can post ratings and reviews on products and services for commercial purposes" in Class 35; and

- "hosting of digital content on the Internet" in Class 42.

21. Under § 33(a) of the Lanham Act (15 U.S.C. § 1115(a)), Lyst's registration constitutes *prima facie* evidence of the validity of its registered Mark and also of Lyst's ownership of and exclusive right to use the Mark in connection with the services specified in the

registration.

### B. The LYST® Mark Is Inherently Distinctive.

22. In the parlance of trademark law, the LYST® Mark is "arbitrary" or "fanciful," because it does not describe or suggest the services that Lyst provides. The word "lyst" has no English language meaning. Rather, the Mark derives from the word "lyst," which means "to desire" in various Scandinavian languages (including Old Norse, Icelandic, Norwegian and Danish), being the root of the modern English word "lust." "Lyst" is also a visual play on, and composite of, the words "LIST" and "STYLE," as well as an anagram of the word "style" without the "e."

23. Arbitrary or fanciful marks are inherently distinctive and the strongest trademarks under trademark law.

24. Lyst's global operations have grown exponentially since its incorporation in 2010. Through extensive marketing efforts and investment in the software-based services, Lyst has developed a significant reputation amongst its customers on a B2B and B2C basis for its data-driven e-commerce marketplace. Goods and services covered by the Mark are accessed and used in over 100 countries around the world. Lyst partners with 12,000 of the world's most prestigious and desirable fashion designers on its technology platform. Over 40 million consumers globally have used Lyst's platform in the past year alone to communicate with each other and connect to these leading fashion designers and stores.

25. The many articles written about Lyst, as well as the industry awards and recognition that Lyst has achieved, demonstrate that Lyst has developed a significant reputation in the U.S. and abroad not just as a provider of retail services, but as a technology and data-driven business providing innovative services to its customers and business partners.

26. As a result, the LYST® Mark has acquired extensive recognition among the trade,

industry and public, and it is strongly associated with Lyst.

### C.     The Defendant's "Lystable" Name Infringes The LYST® Mark.

27.    Upon information and belief, Lystable is a technology company incorporated less than six months ago that provides SaaS services.  According to publicly available information, Lystable digitally hosts data and provides a software platform to allow its customers to organize and interact with freelancers and external vendors.

28.    Lystable's customers include technology companies, fashion brands and retailers. Our client understands that fashion e-commerce website Farfetch is an existing customer of Lystable (see "*Startup of the Year 2015-2016 competition entry: Lystable*," available at www.theguardian.com/small-business-network/2016/feb/10/startup-of-the-year-competition-entry-lystable).

29.    In fact, Lystable has declared that it intends to target the fashion industry as one of the sectors which Lystable wants to "dominate," and has said that it sees "the ASOS's of the world" as its "biggest vertical" in terms of customers (see "*Lystable gets $11m Series A to push its gig economy Saas in the US*" available at www.techcrunch.com/2016/06/22/lystable-gets-11m-series-a-to-push-its-gig-economy-saas-in-the-us/).

30.    The Defendant's name is closely similar to LYST® in sound, appearance, and commercial impression.  The first and most dominant element of "Lystable" is identical to the LYST Mark.  The second, non-distinctive element, "-able," is a common English adjectival suffix that means "able to be" or "capable of being," and has no distinctiveness at all.  As a consequence, this suffix serves only to draw the average consumer's attention to the dominant and distinctive "Lyst" component of the mark.  The visual impact of the "-able" suffix is so insignificant that the Mark and the "Lystable" sign are virtually identical, and the differences are so minimal that they would likely go unnoticed by the average observer.

31. Lystable offers services on its website at www.lystable.com. Lystable's use of the Mark in the domain name **lyst**able.com (emphasis added) will likely draw consumers to the Lystable website in the belief that the two businesses are the same, or somehow associated with each other.

32. This confusion is compounded by the fact that both businesses are data-driven, technology companies whose software platforms share similar functionality. Lystable, like Lyst, provides a SaaS platform to allow users to search for, collect and manage data. The Lystable website allows companies to manage and aggregate their external workforce "in one simple dashboard." Lyst similarly uses a cloud-based SaaS dashboard (a "Retailer Dashboard") to allow its business partners to analyze and monitor data relating to their products on Lyst's platform. Accordingly, the Defendant's services are likely to appear to the trade and purchasing public to emanate from the same source as Lyst's services.

33. The similarities do not end there. Lyst and the Defendant target the same pool of investors and funds looking to invest in fast-growing technology companies, compete to hire software engineering talent in the same recruitment sphere, and seek to be nominated for and win awards from the same technology start-up industry bodies.

34. Given these striking similarities in the Defendant's name and business, and the substantial overlap in their target markets, confusion is all but assured.

35. Actual confusion has already begun. For instance, Lyst's head of talent recently received a message from a recruiter who believed, mistakenly, that Lystable was a spinoff of Lyst. Similarly, one of the investors in Lyst had a conversation with another investor who confused Lystable with Lyst.

36. Under the federal Lanham Act, 15 U.S.C. § 1072, the Defendant is deemed to

have constructive notice of the LYST® Mark.

37. In fact, upon information and belief, at least some of the Defendant's founders and/or investors actually knew of and were familiar with Lyst's name and registered Mark, but the Defendant adopted the infringing Lystable name anyway, in willful disregard of Lyst's rights.

## COUNT I
## Trademark Infringement – 15 U.S.C. § 1114(a)

38. Lyst repeats and re-alleges the allegations set forth in Paragraphs 1 through 37 as if fully set forth herein.

39. Lyst owns the distinctive LYST® Mark covered by U.S. Trademark Reg. No. 5,045,749. The registration was duly issued by the PTO and is valid, subsisting, and enforceable.

40. The Defendant's use of the "Lystable" name and mark has caused and, unless enjoined, will continue to cause confusion, mistake or deception as to the source, affiliation, connection, or association of the Defendant's goods and services with Lyst, or as to the approval, sponsorship or endorsement of the Defendant's products and services by Lyst. The Defendant's conduct is causing Lyst irreparable injury and is unjustly enriching the Defendant in violation of 15 U.S.C. § 1114.

41. The Defendant's actions constitute infringement of Lyst's registered Mark.

42. The Defendant's infringement is willful.

43. Unless enjoined by this Court, the Defendant will continue to use its infringing mark and to unlawfully trade on the goodwill associated with the LYST® Mark.

44. As a result of the Defendant's actions, Lyst has suffered and will continue to suffer monetary injury and irreparable harm for which it has no adequate remedy at law.

9

## COUNT II
## Unfair Competition – 15 U.S.C. § 1125(a)

45. Lyst repeats and re-alleges the allegations set forth in Paragraphs 1 through 44 as if fully set forth herein.

46. Lyst owns the distinctive LYST® Mark covered by U.S. Trademark Reg. No. 5,045,749. The registration was duly issued by the PTO and is valid, subsisting, and enforceable.

47. The Defendant has used and is currently using its confusingly similar name and infringing mark to identify its services. Lyst, however, began using its name and prior registered Mark to identify its services nearly six years ago.

48. The Defendant has used and is deliberately using, in willful violation of 15 U.S.C. § 1125(a), a name and designation of origin that is likely to cause confusion, mistake or deception as to its affiliation or association with Lyst. This use misrepresents the nature, characteristics, and qualities of the Defendant's goods and services by creating the false impression that they are provided by or associated with Lyst.

49. Unless enjoined by this Court, the Defendant will continue to use its infringing "Lystable" name and to trade on and misappropriate the goodwill associated with the LYST® Mark.

50. As a result of the Defendant's actions, Lyst has suffered and will continue to suffer monetary injury and irreparable harm for which it has no adequate remedy at law.

## COUNT III
## Unfair Competition – New York Common Law

51. Lyst repeats and re-alleges the allegations set forth in Paragraphs 1 through 50 as

if fully set forth herein.

52. Lyst has used the LYST® Mark for nearly six years, including in commerce within the State of New York. Lyst has invested money, effort, and resources in developing the goodwill that is associated with the Mark.

53. The Defendant has adopted and is using the infringing "Lystable" name and mark with knowledge of Lyst and its Mark.

54. The Defendant is using the infringing "Lystable" name in competition with Lyst.

55. By its conduct, the Defendant is misappropriating Lyst's investment in its name and Mark and the goodwill associated with them.

56. The Defendant has acted and continues to act in bad faith.

57. The Defendant's conduct constitutes unfair competition under the common law of the State of New York.

58. As a result of the Defendant's unfair competition, Lyst has suffered and will continue to suffer monetary injury and irreparable harm for which it has no adequate remedy at law.

## PRAYERS FOR RELIEF

a) Enter judgment in favor of Lyst Ltd and against the Defendant on Counts I, II, and III, in an amount to be determined at trial.

b) Enter an order preliminarily and permanently enjoining and restraining the Defendant, its officers, agents, servants, employees, successors, assigns, parents, subsidiaries, affiliated and/or related companies, attorneys and all persons in active concert and/or participation with the Defendant from the following:

  (i) Infringing the LYST® Mark covered by U.S. Trademark Reg. No. 5,045,749;

  (ii) Using the mark or name "Lystable" or any confusingly similar mark, name, or colorable imitation thereof, to promote, market, advertise, or sell the Defendant's products or services, or otherwise in connection with the

     Defendant's conduct of its business in such a way as to mislead or confuse anyone as to the source, affiliation or sponsorship of such business;

  (iii) Otherwise infringing the distinctive quality of the LYST® Mark;

  (iv) Injuring Lyst's business reputation and the goodwill associated with its LYST® Mark and from otherwise unfairly competing, directly or indirectly, with Lyst, its affiliates, or subsidiaries; and

  (v) Causing a likelihood of confusion or misunderstanding as to source, sponsorship, association, affiliation or approval with or by Lyst, or engaging in conduct tending to create a false commercial impression of the Defendant's products or services, or any other conduct that tends to pass off the Defendant's products or services as those of Lyst or creates a likelihood of confusion or misunderstanding or false representation.

c) Direct the Defendant to file in Court and to serve on Lyst, within thirty (30) days after entry of the above injunction, a report in writing, under oath, setting forth in detail the manner and form in which they have complied with the injunction.

d) Direct the Defendant to deliver up to this Court for destruction, pursuant to 15 U.S.C. § 1118, all signs, prints, advertisements, publications, promotions or other articles in its possession, custody or control bearing the Lystable mark, or any reproduction, counterfeit, copy or colorable imitation thereof, and all plates, molds, matrices, screens or other means of making the same.

e) Require the Defendant to account for and pay over to Lyst all actual damages that it has suffered; all gains, profits and advantages derived by the Defendant from its infringement of the LYST® Mark, and/or from the Defendant's aforesaid acts of unfair competition and other unlawful acts; and any such damages as to the Court shall appear proper within the provisions of the Lanham Act and New York common law.

f) Enter an order requiring the Defendant to compensate Lyst for all advertising, public relations, and other related expenses incurred by Lyst in connection with its efforts to dispel public confusion caused by the Defendant's infringement of the LYST® Mark, and/or by the Defendant's unfair competition and other unlawful acts.

g) Award increased damages to fully compensate Lyst and punitive damages for the willful and wanton nature of the Defendant's wrongful acts.

h) Order the Defendant to pay interest, costs and reasonable attorneys' fees to Lyst, pursuant to 15 U.S.C. § 1117(a).

i) Grant Lyst such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Dated: New York, New York
December 9, 2016

Respectfully submitted,

**BROWN RUDNICK LLP**

By: */s/ Jill Forster*
Jill Forster
Seven Times Square
New York, NY 10036
(212) 209-4800 (phone)
(212) 209-4801 (fax)
jforster@brownrudnick.com

- and -

Edward J. Naughton (*pro hac vice* pending)
One Financial Center
Boston, MA  02111
(617) 856-8200 (phone)
(617) 856-8228 (fax)
enaughton@brownrudnick.com

*Attorneys for Plaintiff Lyst Ltd*